IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| B.E. TECHNOLOGY, L.L.C., | |
| Plaintiff, | |
| v. | Case No. 2:12-cv-02823-JPM-tmp |
| BARNES & NOBLE, INC., | **JURY TRIAL REQUESTED** |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT BARNES & NOBLE, INC.'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**Table of Contents**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. Barnes & Noble's Relevant Witnesses and Documents are Predominantly Located in the Northern District of California. | 3 |
| | B. Plaintiff's Connections to This Forum Are Minimal | 4 |
| | C. Potential Third Party Witnesses and Documents are Located Primarily in the Northern District of California. | 4 |
| III. | APPLICABLE LAW | 5 |
| IV. | ARGUMENT | 6 |
| | A. B.E.'s Action Against Barnes & Noble Could Have Been Brought in the Northern District of California. | 6 |
| | B. The Private Interest Factors Weigh in Favor of Transfer to the Northern District of California | 6 |
| |     1. The convenience of the parties favors transfer. | 6 |
| |     2. The convenience of the witnesses favors transfer. | 7 |
| |     3. The location of sources of proof favors transfer. | 8 |
| |     4. The other private interest factors do not weigh against transfer. | 9 |
| | C. The Interests of Justice Favor Transfer. | 9 |
| | D. MDL Proceedings Should Not be a Factor | 11 |
| V. | CONCLUSION | 11 |

## Table of Authorities

**Cases**

*Droplets, Inc. v. Amazon.com, Inc.*, No. 2:11-cv-392, 2012 WL 3578605 (E.D.Tex. June 27, 2012) .................................................................................................................. 10

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ............................................................. 7, 8

*In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ............................................. 2, 7, 9

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2010) ............................................................... 2, 7

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ......................................................... 7, 8

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ..................................................................... 7

*In re Zimmer Holdings*, 609 F.3d 1378 (Fed. Cir. 2010) ......................................................... 7, 10

*Just Intellectuals, PLLC v. Clorox Co.*, No. 10-12415, 2010 WL 5129014 (E.D. Mich. Dec. 10, 2010) ........................................................................................................................ 9

*Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 2:07-cv-02702-JPM, 2008 WL 2690084 (W.D. Tenn. July 1, 2008) ...................................................................... 5

*L&P Prop. Mgmt. Co. v. JTMD, LLC*, No. 06-13311, 2007 WL 295027 (E.D. Mich. Jan. 29, 2007) .................................................................................................................. 8

*Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131 (6th Cir. 1991) ................................................ 5

*Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003) ................................................ 11

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................................ 5

*Tuna Processors, Inc. v. Hawaii Int'l Seafood, Inc.*, 408 F. Supp. 2d 358 (E.D. Mich. 2005) ........................................................................................................................... 5

*U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, 2011 WL 127852 (N.D. Ohio, Jan. 14, 2011) .......................................................................................................................... 10

**Statutes**

28 U.S.C. § 1391 ............................................................................................................................ 6

28 U.S.C. § 1400 ............................................................................................................................ 6

28 U.S.C. § 1404 ............................................................................................................................ 5

**I.      INTRODUCTION**

This is a patent infringement lawsuit filed by B.E. Technology, Inc. ("B.E.") against Barnes & Noble, Inc.  It is one of a group of cases filed in September and October 2012, in which B.E. has asserted one or both of U.S. Patent Nos. 6,771,290 ("the '290 patent") and 6,628,314 ("the '314 patent") against nineteen different companies.[1]  B.E. accuses Barnes & Noble of infringing the '290 patent by allegedly "using, selling, and offering to sell in the United States tablet computer products" including the "Nook Simple Touch; Nook Simple Touch with GlowLight; Nook Color; [and] Nook Tablet."  (*See* Compl., Dkt. No. 1 at ¶ 11.)

Neither B.E. nor the operative set of facts in this case has any meaningful connection to this District.  In contrast, compelling reasons support transferring this case to the Northern District of California, where this case has direct, concrete, and extensive connections for Barnes & Noble and third parties with relevant information.[2]

This case has no true connection to the Western District of Tennessee.  B.E. was, until very recently, a company based out of Saginaw, Michigan.  It appears to have registered to do business in the Western District of Tennessee just one day before initiating its litigations against

---

[1] These companies will collectively be referred to as the "Defendants" herein, and include Amazon Digital Services, Inc. (12-cv-02767), Apple Inc. (12-cv-02831), Barnes & Noble (12-cv-02823), Facebook, Inc. (12-cv-02769), Google Inc. (12-cv-02830), Groupon, Inc. (12-cv-02781), LinkedIn Corp. (12-cv-02772), Match.com L.L.C. (12-cv-02834), Microsoft Corp. (12-cv-02829), Motorola Mobility Holdings LLC (12-cv-02866), Pandora Media, Inc. (12-cv-02782), People Media, Inc. (12-cv-02833), Twitter, Inc. (12-cv-02783), Samsung Telecommunications America, LLC (12-cv-02824), Samsung Electronics America, Inc. (12-cv-02825), Sony Computer Entertainment America LLC (12-cv-02826), Sony Mobile Communications (USA), Inc. (12-cv-02827), Sony Electronics, Inc. (12-cv-02828), and Spark Networks, Inc. (12-cv-02832).

[2] Barnes & Noble understands that many other Defendants in the B.E. Litigations are also located in the Northern District of California or elsewhere and have also filed, or are planning to file, motions to transfer.  Barnes & Noble requests that the Court evaluate its transfer motion individually; however, to the extent the Court considers the cases filed by B.E. against other companies in this District, the fact that so many of them are located or have major operations in the Northern District of California counsels in favor of transfer to that venue.

19 Defendants in this District. Unsurprisingly, B.E.'s recently engineered contacts with this District bear no relation to any of the facts relevant to this lawsuit. In addition, B.E.'s lead counsel is located in the Northern District of California. B.E's contacts with this District therefore are minimal and recent, and appear to have been manufactured solely for litigation purposes. Accordingly, B.E.'s choice of venue is entitled to no deference. *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2010) (courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

      The Northern District of California, in contrast, is both uniquely connected to and clearly a more convenient venue for this litigation. Barnes & Noble is a retailer with national sales of books and other products, including the accused NOOK® devices. It is incorporated in Delaware with headquarters in New York, but the vast majority of activities related to Barnes & Noble's accused NOOK® products take place at Barnes & Noble's offices in Palo Alto, California. As a result, the Northern District of California possesses a unique, particularized local interest in passing judgment on Barnes & Noble's accused NOOK® products—the design and development of which occurred within its boundaries. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding a strong local interest where a case "calls into question the work and reputation of several individuals residing in or near that district.") By contrast, there is no unique local connection to Tennessee, as Barnes & Noble's activities related to the accused NOOK® products are not in Tennessee and until very recently, B.E. did not have any contacts with this District.

## II.     FACTUAL BACKGROUND

### A.     Barnes & Noble's Relevant Witnesses and Documents are Predominantly Located in the Northern District of California.

The Northern District of California is the center of gravity of the accused activity for Barnes & Noble.  Its activities relating to the accused NOOK® products take place primarily at Barnes & Noble's offices in Palo Alto.  (Declaration of Daniel Gilbert in Support of Barnes & Noble, Inc.'s Motion to Transfer Venue ("Gilbert Decl.") at ¶¶ 3-4. [Copy attached.])  Over 400 employees work at Barnes & Noble's offices in Palo Alto.  (*Id*. at ¶ 3.)  The Barnes & Noble employees who are primarily responsible for selecting and sourcing components for NOOK® products, designing NOOK® products, developing the specifications for NOOK® products, and developing software for NOOK® products work at Barnes & Noble's Palo Alto offices.  (*Id*.)  Thus, the Barnes & Noble employees most knowledgeable about the design, development, and operation of the accused NOOK® products are located in the Northern District of California.  Likewise, the Barnes & Noble documents most relevant to the design, development, and operation of the accused NOOK® products are located in its Palo Alto offices.[3]  (*Id*. at ¶ 4.)

Although Barnes & Noble has employees in the Western District of Tennessee in connection with its brick and mortar bookstore operations, they are not the individuals knowledgeable about the relevant technical aspects of the accused NOOK® products or any other anticipated subject matter of this litigation who will serve as Barnes & Noble's corporate witnesses.  (*Id*. at ¶ 5.)  None of Barnes & Noble's employees that are most knowledgeable about the design, development, and operation of the accused NOOK® products work in the Western

---

[3]  Barnes & Noble acknowledges that there are likely some witnesses and documents relevant to other issues, such as the sales and marketing of the accused NOOK® products, that may be located outside the Northern District of California.  However, the majority of relevant documents and witnesses in this case, including those relating to the allegations of infringement in the Complaint, are located in the Northern District of California.

District of Tennessee.  (*Id*. at ¶¶ 3, 5.)  Nor is Barnes & Noble aware of any relevant documents relating to the operation of the accused NOOK® products that are located in the Western District of Tennessee, other than product-related documents that would be in the possession of other Barnes & Noble bookstores throughout the United States.  (*Id*. at ¶ 3.)

### B. Plaintiff's Connections to This Forum Are Minimal

B.E. is a Delaware corporation.  *See* Compl. (Dkt. No. 1) at ¶ 2.  B.E.'s patent filings list it as a Saginaw, Michigan-based company as recently as June 21, 2012.  (*See* Google's Mem. in Supp. of Its Mot. to Transfer, Case No. 2:12-cv-2830, Dkt. No. 22 ("Google Transfer Mem."), at Ex. B.)  In fact, according to the Tennessee Secretary of State website, it was not until September 6, 2012 – the day before filing the first of its cases here – that B.E. was even registered to do business in Tennessee.  (*See id*. at Ex. C.)  B.E. does not offer any products for sale, and does not appear to have an office in Memphis, which it now alleges is its principal place of business.  As described in Section II of Apple's memorandum in support of its motion to transfer, the '290 patent identifies Martin David Hoyle of Louisiana as the sole inventor, and although the available information is conflicting, a patent application filed as recently as December 2011 lists Mr. Hoyle's residence as New Orleans, LA  (*See* Apple's Mem. in Supp. of Its Mot. to Transfer, Case No. 2:12-cv-2831, Dkt. No. 22 ("Apple Transfer Mem."), at 2-3.)  Additionally, Plaintiff's lead trial counsel in this case is based in the Northern District of California.

### C. Potential Third Party Witnesses and Documents are Located Primarily in the Northern District of California

As described in memoranda in support of other defendants' motions to transfer to the Northern District of California, a substantial number of third party witnesses with knowledge of the prior art are located in California.  (*See* Google Transfer Mem. at Sec. II.B.3; Apple Transfer Mem. at Sec. V.C.)

**III.     APPLICABLE LAW**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought. . . ."  The decision to transfer under section 1404(a) is committed to the sound discretion of the trial court.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

The first inquiry in deciding a motion to transfer is whether the plaintiff might have brought the action in the transferee court.  If so, the district court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991); *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 2:07-cv-02702-JPM, 2008 WL 2690084, at *2 (W.D. Tenn. July 1, 2008) (stating that private interests include: "the convenience of the parties, the convenience of the witnesses, the location of sources of proof, where the operative facts occurred, the relative ability of litigants to bear expenses in any particular forum, the possibility of prejudice in either forum, and other practical problems affecting the case"); *Tuna Processors, Inc. v. Hawaii Int'l Seafood, Inc.*, 408 F. Supp. 2d 358, 361 (E.D. Mich. 2005).

Although a plaintiff's choice of venue is generally entitled to deference, "where the plaintiff has little or no connection to the chosen forum, its reasons for choosing and remaining there should be given less weight."  *Tuna Processors*, 408 F. Supp. 2d at 360.

IV.     **ARGUMENT**

    A.     **B.E.'s Action Against Barnes & Noble Could Have Been Brought in the Northern District of California**

Pursuant to 28 U.S.C. § 1400, a patent infringement action may be brought in the district where the defendant resides. 28 U.S.C. § 1400(b). A corporate defendant "resides" in any district in which it is subject to personal jurisdiction at the time the suit is filed. 28 U.S.C. § 1391(c). Barnes & Noble maintains a presence and does business within the Northern District of California, and the center of Barnes & Noble's NOOK® operations is in its Palo Alto offices. (Gilbert Decl. at ¶¶ 3-4.) Accordingly, personal jurisdiction exists and venue is proper in the Northern District of California, and B.E. could have properly sued Barnes & Noble for patent infringement in that district.

    B.     **The Private Interest Factors Weigh in Favor of Transfer to the Northern District of California**

        1.     **The convenience of the parties favors transfer.**

Barnes & Noble is a Delaware corporation with its headquarters in New York, but its activities relating to the accused NOOK® products take place in Palo Alto, California. (Gilbert Decl. at ¶¶ 3-4.) None of Barnes & Noble's witnesses or key documents are located in this District. (*Id.*) Therefore, the Northern District of California is clearly more convenient for Barnes & Noble.

B.E. is a Delaware corporation that identified itself as based in Michigan as recently as June 21, 2012. (*See* Compl. (Dkt. No. 1) at ¶ 2; Google Transfer Mem. at Ex. B.) Additionally, B.E. was not registered to do business in Tennessee until September 6, 2012 – the day before filing the first of its cases here. (*See id.* at Ex. C.) Thus, B.E. does not appear to have a significant connection to this District. Although the plaintiff's forum is typically entitled to deference, that is not the case where, as here, the plaintiff's presence in the district "appears to be

recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see also In re Microsoft Corp.*, 630 F.3d at 1365 (plaintiff's incorporation in the forum state 16 days before filing suit was "no more meaningful, and no less in anticipation of litigation" than other rejected reasons against transfer); *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336-37 (plaintiff's conversion and transfer of 75,000 pages of documents to plaintiff's choice of forum is a "fiction which appears to be have been created to manipulate the propriety of venue").

Thus, any inconvenience to B.E. resulting from transfer of this case to the Northern District of California would likely be outweighed by the inconvenience to Barnes & Noble that would result if the case proceeds in this District—a fact that B.E.'s selection of lead trial counsel in the Northern District of California, tends to underscore. Accordingly, because the parties' contacts with this District are minimal by comparison, this factor weighs in favor of transfer.

### 2.     The convenience of the witnesses favors transfer.

The cost of attendance for and convenience of the witnesses "is probably the single most important factor in transfer analysis." *In re Genentech, Inc*., 566 F.3d 1338, 1343 (Fed. Cir. 2009). "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)). The proposed venue does not need to be more convenient for all of the witnesses—this factor favors transfer when a substantial number of material witnesses reside in the transferee venue. *In re Genentech*, 566 F.3d at 1345.

Based on Barnes & Noble's current understanding of B.E.'s allegations, Barnes & Noble's witnesses work and/or reside primarily in the Northern District of California, and none

7

are located in Tennessee. (Gilbert Decl. at ¶¶ 3, 5.) Though Barnes & Noble's headquarters are in New York, the center of gravity for the design and development of the accused NOOK® products is in Palo Alto, in the Northern District of California. (*Id.* at ¶¶ 3-4.) This office houses more than 400 employees, including the employees who are most knowledgeable in the company regarding the design, development, and operation of the accused products. (*Id.* at ¶ 3.)

Memphis, Tennessee is over 1,700 miles from the Northern District of California, and travel there would impose a significant inconvenience for Barnes & Noble's witnesses. The absence of Barnes & Noble employees who are most knowledgeable, and therefore likely to serve as witnesses regarding the accused NOOK® products, would adversely affect Barnes & Noble's operations. (*Id.* at ¶ 5.) Because a substantial number of the material witnesses are located in the Northern District of California, and none of Barnes & Noble's likely witnesses are located within or near the Western District of Tennessee, this factor strongly favors transfer.

### 3. The location of sources of proof favors transfer.

The location of the foreseeable sources of proof relating to the issues in this case favors transfer to the Northern District of California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo*, 589 F.3d at 1199 (citing *In re Genentech*, 566 F.3d at 1345). In this case, the potentially relevant Barnes & Noble documents relating to the accused NOOK® products are located in the Northern District of California, not in this District. Because the physical and documentary evidence relevant to at least the critical issue of alleged infringement are located in the Northern District of California, this factor weighs in favor of a transfer to that district. *L&P Prop. Mgmt. Co. v. JTMD, LLC*, No. 06-13311, 2007 WL 295027, at *5 (E.D. Mich. Jan. 29, 2007) (finding this factor weighed in favor of transfer where all of the defendants' documents were located in the

8

transferee district and plaintiffs had not identified any sources of evidence located in the transferring district); *Just Intellectuals, PLLC v. Clorox Co.*, No. 10-12415, 2010 WL 5129014, at *4 (E.D. Mich. Dec. 10, 2010) (same).

### 4. The other private interest factors do not weigh against transfer.

The majority of operative facts at issue in this case occurred in the Northern District of California because that is the center of gravity for Barnes & Noble's activities relating to the accused NOOK® products—including design and development of the NOOK® products. (Gilbert Decl. at ¶¶ 3-4.) The expense for B.E. to litigate this case in the Northern District of California should not be significantly, if any, higher than in the Western District of Tennessee because its lead trial counsel is located in the Northern District of California. B.E. will not face prejudice in the Northern District of California, and to the extent there are any practical problems affecting this case, they are a direct result of B.E. having filed lawsuits against nineteen different companies, and should not weigh against transfer.

### C. The Interests of Justice Favor Transfer.

The Northern District of California has a strong local interest in this case because it is home to Barnes & Noble's NOOK® operations, and therefore the relevant witnesses and evidence relating to the products accused of infringement. (*See supra* Sec. II.A.) *See In re Hoffman-La Roche, Inc.*, 587 F.3d at 1336 ("[The destination venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district."). There is no unique local connection to the Western District of Tennessee, as Barnes & Noble's operations that are relevant to this case are not in Tennessee and B.E. has had only minimal contacts with this District. (*See supra* Sec. II.A.) Accordingly, the Northern District of California is clearly the center of gravity of the accused activity and the district in which the litigation should proceed.

9

The relative congestion of the Northern District of California and this District does not weigh against transfer.  In 2011, the median time to trial for a civil case was 34.3 months in the Northern District of California, and 22.6 months in the Western District of Tennessee.  (*See* Google Transfer Mem. at Ex. E.)  However, the average docket of pending cases per judge in the same year was higher in the Western District of Tennessee (499) than it was in the Northern District of California (475), and the average life span of a case from filing to disposition was around three months longer in this District than in the Northern District of California.  (*Id.*)  Accordingly, this factor is neutral.  *See*, *e.g.*, *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, 2011 WL 127852, at *7 (N.D. Ohio, Jan. 14, 2011) (finding that where the median time to trial was shorter, but the average docket of pending cases per judge and the average life span of a case was longer in the transferring district, the "facts favor neither transfer nor retention").

Nor does transferring this case to the Northern District of California cause a waste of judicial resources because all of the B.E. Litigations are at a very early stage and a majority of the Defendants have filed or plan to file motions to transfer to the Northern District of California, or other more convenient venues.  To the extent there is a risk of inconsistent judgments due to proceedings in more than one district court, those concerns are diminished here because the cases involve different defendants and non-overlapping accused products.  *See In re Zimmer Holdings, Inc.*, 609 F.3d at 1382 (rejecting argument that transfer would be inefficient where co-pending cases involve different accused products, different defendants, and a single overlapping patent); *see also Droplets, Inc. v. Amazon.com, Inc.*, No. 2:11-cv-392, 2012 WL 3578605, at *8 (E.D.Tex. June 27, 2012) (transferring case to the Northern District of California despite existence of co-pending litigation in the Southern District of New York because "considerations of judicial economy are outweighed by the location of sources of proof, the availability of compulsory

process, the convenience of witnesses, and the strong local interest of the Northern District of California in this suit"); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 133 (S.D.N.Y. 2003) (rejecting the argument that transfer of cases to more than one destination venue could result in inconsistent judgments where cases involved different products and defendants).

Thus, the interests of justice favor transfer because the Northern District of California has a more substantial local interest in this case than the Western District of Tennessee.

### D. MDL Proceedings Should Not be a Factor

As described in Section IV.E of Google's memorandum in support of its motion to transfer to the Northern District of California, whether the B.E. Litigations are ultimately subjected to an MDL action should not be a consideration in the Defendants' motions to transfer venue.

## V. CONCLUSION

For all of the foregoing reasons, Barnes & Noble respectfully moves the Court to transfer this case to the Northern District of California. When all of the relevant factors are weighed and balanced, that forum is clearly the most convenient.

Respectfully submitted,

s/Glen G. Reid, Jr.
Glen G. Reid, Jr. (#8184)
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Phone: 901.537.1000
Facsimile: 901.537.1010
greid@wyattfirm.com

s/Mark Vorder-Bruegge, Jr.
Mark Vorder-Bruegge, Jr. (#06389)
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Phone: 901.537.1000
Facsimile: 901.537.1010
mvorder-bruegge@wyattfirm.com

David Eiseman
Brett Watkins
Pamela L. Van Dort
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1299 Pennsylvania Avenue NW
Suite 825
Washington, D.C. 20004
Telephone:  202.538.8000
Facsimile:  202.538.8100
davideiseman@quinnemanuel.com
brettwatkins@quinnemanuel.com
pamelavandort@quinnemanuel.com

Attorneys for Defendant Barnes & Noble, Inc.

60308416.1