IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

---

B.E. TECHNOLOGY, LLC,      )
                                  )
     Plaintiff,         )
                                  )
v.                            )     No.: 2:12-cv-02823-JPM-tmp
                                  )
BARNES & NOBLE, INC.     )
                                  )
     Defendant.         )

---

**ORDER DENYING MOTION TO TRANSFER VENUE**

---

Before the Court is Defendant Barnes & Noble, Inc.'s ("Defendant" or "Barnes & Noble") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed January 7, 2013. (ECF No. 28.) For the reasons that follow, the Motion is DENIED.

**I.  BACKGROUND**

This case concerns Defendant Barnes & Noble's alleged infringement of United States Patent No. 6,771,290 (the "'290 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E.") is the assignee of the '290 patent (ECF No. 32 at 2), currently owning "all right, title, and interest" in the patent "throughout the period of the infringement" (ECF No. 1 ¶ 10).

B.E. alleges that Barnes & Noble infringed the '290 patent "by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2

of the '290 patent either literally or under the doctrine of equivalents." (Id. ¶ 11.)  B.E. alleges "[t]he accused products include Nook Simple Touch; Nook Simple Touch with GlowLight; Nook Color; [and] Nook Tablet." (Id.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.)  Barnes & Noble filed its Answer on December 31, 2012 (ECF No. 26) and its Motion to Transfer Venue on January 7, 2013 (ECF No. 28).  B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on January 25, 2013.  (ECF No. 32.)  With leave of Court, Barnes & Noble filed a Reply Memorandum in Support of Its Motion to Transfer on February 13, 2013.  (ECF No. 39.)  On February 14, 2013, Barnes & Noble filed a Motion to Stay pending resolution of its Motion to Transfer Venue.  (ECF No. 40.)  The Court granted Barnes & Noble's Motion to Stay the same day.  (ECF No. 41.)

Barnes & Noble seeks to transfer this case to the Northern District of California.  (ECF No. 28-1 at 2.)  To support its Motion, Barnes & Noble contends that "the vast majority of activities related to Barnes & Noble's accused NOOK® products take place at Barnes & Noble's offices in Palo Alto, California." (Id.)  Additionally, Barnes & Noble asserts that its employees with knowledge of the accused products and a majority of third-party witnesses on whom it may rely are also

located in or around the Northern District of California.  (Id. at 3-4.)

B.E. opposes Barnes & Noble's Motion to Transfer.  B.E. is a limited-liability company incorporated in Delaware.  (ECF No. 1 ¶ 2.)  B.E. was originally registered in Michigan, but formally registered to conduct business in Tennessee in September 2012.  (ECF No. 32 at 2.)  B.E. contends that Memphis, Tennessee, is its principal place of business.  (ECF No. 1 ¶ 2.) Martin David Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor of the '290 patent.  (ECF No. 32 at 1.)  Hoyle has been a resident of Tennessee since April, 2006.  (Id. at 2.) B.E. argues that transfer is inappropriate because it has substantial connections with this district.  B.E. argues that Hoyle has been "present in this District since 2006, and B.E. since at least 2008," and this district is B.E.'s principal place of business.  (Id. at 5.)  B.E. also argues that none of its witnesses are located in the Northern District of California.  (Id. at 7.)  Further, B.E. argues that its corporate documents, including documents relating to the "conception and reduction to practice" of the patents-in-suit, are located in this District.  (Id. at 4, 5, 12-13.)

## II. STANDARD

Barnes & Noble moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

3

(ECF No. 28.)  The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."  Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district.  28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought").  Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district.  Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived

4

from the forum non conveniens doctrine." <u>Norwood v.</u>
<u>Kirkpatrick</u>, 349 U.S. 29, 31 (1955) (quoting <u>All States Freight</u>
<u>v. Modarelli</u>, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal
quotation marks omitted); <u>Esperson</u>, 2010 WL 4362794, at *5.  The
United States Court of Appeals for the Sixth Circuit has stated
that when deciding "a motion to transfer under § 1404(a), a
district court should consider the private interests of the
parties, including their convenience and the convenience of
potential witnesses, as well as other public-interest concerns,
such as systemic integrity and fairness, which come under the
rubric of 'interests of justice.'" <u>Moore v. Rohm & Haas Co.</u>,
446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been
interpreted broadly by courts, influenced by the individualized
circumstances of each case.  The United States Court of Appeals
for the Federal Circuit has set forth a non-exhaustive list of
pertinent public-interest factors:

> The public interest factors include (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the
> forum with the law that will govern the case; and (4)
> the avoidance of unnecessary problems of conflicts of
> laws or in the application of foreign law.

<u>In re Acer Am. Corp.</u>, 626 F.3d 1252, 1254 (Fed. Cir. 2010); <u>see</u>
<u>also</u> <u>In re Nintendo Co., Ltd.</u>, 589 F.3d 1194, 1198 (Fed. Cir.
2009) (finding the local-interest factor weighed heavily in

favor of transfer); <u>Cincinnati Ins. Co. v. O'Leary Paint Co.</u>, 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering additional factors such as the relative docket congestion of each district).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer. (ECF No. 32 at 4-6.) B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. <u>Compare</u> <u>Hunter Fan Co. v. Minka Lighting, Inc.</u>, No. 06-2108 M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), <u>with</u> <u>OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co.</u>, No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), <u>and</u> <u>Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc.</u>, 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), <u>aff'd per curiam</u>, 22 F.3d 1104 (6th Cir. 1994). Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may

6

be considered, but is entitled to less deference.  Discussing

the difference between the common-law doctrine of forum non

conveniens and the federal transfer-of-venue statute in <u>Norwood</u>,

the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience.  This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

<u>Norwood</u>, 349 U.S. at 32; <u>see also</u> <u>Lemon v. Druffel</u>, 253 F.2d

680, 685 (6th Cir. 1958) ("The choice of the forum by the

petitioner is no longer as dominant a factor as it was prior to

the ruling in <u>Norwood v. Kirkpatrick</u>[.]"); <u>Esperson</u>, 2010 WL

4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a

change of venue to the transferee district is warranted.  <u>See</u>

<u>Eaton v. Meathe</u>, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.

Mich. May 18, 2011); <u>Amphion, Inc. v. Buckeye Elec. Co.</u>, 285 F.

Supp. 2d 943, 946 (E.D. Mich. 2003); <u>Roberts Metals, Inc.</u>, 138

F.R.D. at 93.  "Merely shifting the inconvenience from one party

to another does not meet Defendant's burden."  <u>McFadgon v. Fresh</u>

<u>Mkt., Inc.</u>, No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.

Oct. 21, 2005).  "[T]he movant must show that the forum to which

7

he desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice." Roberts Metals, Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal quotation marks omitted).  If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

**III. ANALYSIS**

Barnes & Noble asserts that B.E. could have brought this action in the Northern District of California.  (See ECF No. 22-1 at 6.)  B.E. does not dispute this assertion.  (See ECF No. 32 at 4.)  The Court agrees with the parties that B.E. could have brought suit in the Northern District of California as personal jurisdiction over Barnes & Noble exists in that district.  Therefore, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to the parties, and the interest of justice — favors transfer to the Northern District of California.  The Court will address each statutory factor separately and balance these factors to determine whether transfer to the Northern District of California is proper pursuant to § 1404(a).

## A.   Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93).  Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience."  Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  Rinks, 2011 WL 691242, at *3.

Barnes & Noble contends that witness convenience favors transfer to the Northern District of California.  (ECF No. 37 at

7-8.)  To support this contention, Barnes & Noble asserts that a majority of the witnesses on which it intends to rely are located in that district.  These witnesses include Barnes & Noble employees located at its Palo Alto, California, facilities; employees of third-party companies such as Netflix, Inc., and Hulu, LLC, both of which are non-parties to the instant litigation that B.E. has indicated produce "programs, features, firmware, or applications" for use on the allegedly infringing Barnes & Noble products (ECF No. 39 at 3); and third-party witnesses related to prior art.  (ECF No. 28-1 at 7-8; ECF No. 39 at 3-5.)

In response, B.E. argues that "transfer to the Northern District of California would be equally inconvenient to B.E.'s witnesses, none of whom is located in the Northern District of California."  (ECF No. 32 at 7.)  B.E. identifies Hoyle, the named-inventor of the patent-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee.  (Id. at 5, 7-8.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty

consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1.   Party Witnesses

Barnes & Noble asserts that its "witnesses work and/or reside primarily in the Northern District of California, and none are located in Tennessee." (ECF No. 28-1 at 7-8.) Barnes & Noble asserts that the accused products – the Nook product line – were designed and developed in the transferee district. (Id. at 8.) Additionally, Barnes & Noble's office located in the Northern District of California "houses more than 400 employees, including the employees who are most knowledgeable in the company regarding the design, development, and operation of the accused products." (Id.) In its Reply, Barnes & Noble defends its general identification of potential employee-witnesses by stating that the testimony of any employee involved with the Nook product line, "no matter which individual employees are ultimately identified, is plainly relevant to the issues in this case." (ECF No. 39 at 5.) Barnes & Noble also notes that "there are likely some witnesses . . . relevant to other issues, such as the sales and marketing of the accused NOOK® products, that may be located outside the Northern District of California." (ECF No. 28-1 at 3 n.3.)

11

Barnes & Noble does not provide any evidence showing that its employees will be unwilling to testify in the Western District of Tennessee if asked to do so, but notes generally that travel to the transferor district to testify would "impose a significant inconvenience" for its witnesses, and that their absence from Barnes & Noble's Northern California office would "adversely affect" its operations.  (ECF No. 28-1 at 8.)  See Esperson, 2010 WL 4362794, at *8.  Courts have noted that "normally a corporation is able to make its employees available to testify when needed."  Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. v. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses").  Accordingly, it appears that Barnes & Noble's employees will be able to attend absent any evidence to the contrary.

Therefore, regarding its employees, Barnes & Noble does not satisfy its burden.  Barnes & Noble argues that due to the distance between Memphis and the Northern District of California, approximately 1800 miles, travel to Memphis "would impose a significant inconvenience for [its] witnesses."  (ECF

12

No. 28-1 at 8.)  Yet, the same is true for B.E.'s witnesses, which B.E. asserts do not reside in the Northern District of California.  (ECF No. 32 at 7.)  In the instant case, the Court agrees that Barnes & Noble's employees related to the development and operation of its Nook products are located in the transferee district, and that that their testimony is likely material.  Barnes & Noble, however, has only provided a general statement about the necessity of those employees to its business and has not indicated how many employees it would be inclined to call as potential witnesses.  Additionally, Barnes & Noble has indicated that other employee-witnesses not located in the transferee district may be called as witnesses.  As a result, the Court cannot assess the degree to which Barnes & Noble's business would be disrupted compared to the disruption B.E. will endure due to its CEO's absence should the case be transferred.  Accordingly, the Court finds transfer would only shift the inconvenience to B.E.  See McFadgon, 2005 WL 3879037, at *2.

Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer.  Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Barnes & Noble further argues that because it intends to call employee-witnesses located in the transferee district and because B.E. only identified one witness, Hoyle, this factor weighs in favor of transfer. (See ECF No. 39 at 3-4.) While B.E. did not specifically identify any witnesses beyond Hoyle, however, B.E. does not have the burden to do so. Despite B.E. not identifying any individuals beyond Hoyle, Barnes & Noble's identification of some 400 employees "knowledgeable of the design, development, and operation of the NOOK® products" as material witnesses does not satisfy its burden on this factor. (Gilbert Decl., ECF No. 28-2, ¶¶ 3.) A simple numerical advantage is insufficient on the issues raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Barnes & Noble's California-based employees will be deposed in California where B.E.'s lead counsel is based." (ECF No. 32 at 10.) This further indicates that the witness-convenience factor does not weigh in favor of transfer. See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in determining that the witness convenience factor did not favor transfer).

14

## 2.   Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).  Barnes & Noble, referencing arguments related to prior-art witnesses made by Google, Inc. (see No. 2:12-cv-2830-JPM-tmp, ECF No. 22-1, at 5-6), and Apple, Inc. (see No. 2:12-cv-2831-JPM-tmp, ECF No. 22-1, at 8-9), asserts that there are non-party witnesses who have knowledge about prior art related to the patent-in-suit.  (ECF No. 28-1 at 4.)

Additionally, Barnes & Noble argues that B.E., in its infringement contentions filed after the Motion to Transfer, has implicated "Barnes & Noble products and/or services with programs, features, firmware, or applications from two third-party companies, Netflix and Hulu, both of which are headquartered in California."  (ECF No. 39 at 3.)  As a result, potential witnesses from these third parties are likely located within the transferee district, specifically, or within the state of California, generally.  (Id. at 4.)  Barnes & Noble claims that it will not be able to compel these witnesses to testify at trial if the case remains in Tennessee, but will be

able to compel the witnesses to testify at trial, whether they reside within the transferee district or within the state of California, if the case is transferred to the Northern District of California. (<u>Id.</u> at 4 n.1 (citing <u>Brackett v. Hilton Hotels Corp.</u>, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state pursuant to [Federal Rule of Civil Procedure] 45(b)(2)(C) . . . .")).)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Barnes & Noble has made "no showing whatsoever regarding the location, availability, or convenience of third party witnesses with knowledge of potential prior art." (ECF No. 32 at 10.) B.E. contends that Barnes & Noble has only relied on the arguments of two other defendants – Google, Inc., and Apple, Inc. – and has neither identified any prior-art witnesses itself, nor made a "showing that the third party testimony will be material or important." (<u>Id.</u> at 11.) Finally, B.E. argues that Barnes & Noble has not established the "current locations" of any potential prior-art witnesses to the extent that compulsory process would be available in the transferee or transferor districts. (<u>Id.</u> at 11-12.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-

of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court. See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4. Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case. Rinks, 2011 WL 691242, at *4. A federal court in the Northern District of California would be able to compel the non-party witnesses living in the state of California to testify at trial. See Fed. R. Civ. P. 45(b)(2). In contrast, the non-party witnesses would not be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this district. Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive." Rinks, 2011 WL 691242, at *4.

Barnes & Noble, however, has not (1) indicated the number of non-party witnesses it may require for trial; (2) indicated whether it intends to call any of the prior-art witnesses identified in Google, Inc.'s Motion to Transfer (see No. 2:12-cv-2830-JPM-tmp, ECF No. 22-1, at 5-6); (3) disclosed the particulars of the testimony of the potential prior-art witnesses or the third-party witnesses from Netflix, Inc., and Hulu, LLC; or (4) indicated why depositions of prior-art

17

witnesses or third-party witnesses would be inadequate and live testimony required.  To the extent these non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue.  Barnes & Noble's general statements are not sufficient to allow the Court to determine whether live testimony of Barnes & Noble's non-party witnesses is necessary. Further, Barnes & Noble does not state whether it is aware that any of the non-party witnesses would be unwilling to testify in this district if asked to do so.  As a result, this factor does not weigh in favor of transfer.

### B.    Convenience of the Parties

Barnes & Noble argues that the Northern District of California is "clearly a more convenient venue for this litigation." (ECF No. 22-1 at 2.)  While Barnes & Noble organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

### 1.    Location of Sources of Proof

Barnes & Noble argues that "the potentially relevant Barnes & Noble documents relating to the accused NOOK® products" and "the physical and documentary evidence relevant to at least the critical issue of alleged infringement are located in the

18

Northern District of California." (ECF No. 28-1 at 8.) Barnes
& Noble contends that the volume of these "potentially relevant
documents . . . far exceeds the volume of B.E.'s potentially
relevant documents maintained in Tennessee." (ECF No. 39 at 4.)

B.E. argues that, because its CEO resides in the Western
District of Tennessee, its corporate documents and records,
"including documents demonstrating the conception and reduction
to practice of [the patent-in-suit]," are located in the Western
District. (ECF No. 32 at 5, 12.) B.E. notes that while Barnes
& Noble's sources of proof are located in the Northern District
of California, B.E.'s own sources of proof are located in
Tennessee and have been maintained there for years. (Id. at
12.) B.E. also argues that Barnes & Noble has indicated that
some relevant documents – namely those related to sales and
marketing – are not located within the transferee district.
(Id. (citing ECF No. 28-1 at 3 n.3).) B.E. also contends that
"the location of relevant documentary evidence is increasingly
less important in deciding motions to transfer," and that
because documents can be exchanged electronically, the weight
given this factor should be minimal. (Id. at 12-13.) B.E.
finally argues that this factor does not weigh in favor of
transfer because "it can be expected that Barnes & Noble will
eventually produce its documents to B.E.'s lead counsel in
California, not to B.E. in Tennessee." (Id. at 13.)

19

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.  This notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338, 1345-46 (Fed. Cir. 2009) (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Barnes & Noble has in its possession outnumbers the patent-related documents in B.E.'s possession, but the Court disagrees that this is enough to tip the balance in favor of transfer.  The Court finds that both parties maintain some documents in their respective districts; that both sets of documents will be integral to the proceedings; and that Barnes &

Noble will be expected to serve its documents to B.E.'s counsel in Northern California, not in the Western District of Tennessee.  Barnes and Noble's reliance on L&P Property Management Co. v. JTMD, LLC, No. 06-13311, 2007 WL 295027 (E.D. Mich. Jan. 29, 2007), is misplaced.  (See ECF No. 28-1 at 8.) In L&P Property Management, the court found that transfer was appropriate as all of the movant's relevant documents were located in the transferee district and there were no relevant documents in the transferor district.  See L&P Prop. Mgmt. Co., 2007 WL 295027, at *4.  In the instant case, Barnes & Noble indicated that some of its relevant documents are likely located outside the transferee district, and B.E. has shown that relevant documents are located in Tennessee.  Taken together, the aforementioned facts indicate that as to the location of the sources of proof, the Northern District of California may only be a somewhat more convenient venue for the parties to the instant case.  This factor, however, is not sufficient, by itself, to require transfer.

### 2.   Financial Hardships Attendant to Litigating in the Chosen Forum

Barnes & Noble argues that its witnesses "work and/or reside primarily in the Northern District of California, and none are located in Tennessee." (ECF No. 28-1 at 7-8.)  As a result, Barnes & Noble contends that travel to Tennessee would

"impose a significant inconvenience for [its] witnesses," and as
the likely trial witnesses are "the most knowledgeable" about
the accused products, their absence "would adversely affect
Barnes & Noble's operations." (Id. at 8.)

B.E. states that it "would face a financial burden by
having to litigate in the Northern District of California."
(ECF No. 32 at 14.)  B.E.'s CEO Hoyle states that "B.E. will
incur expenses it will not incur if the case remains in
Memphis." (Hoyle Decl., ECF No. 32-1, ¶ 9.)  B.E. also states
that "[i]t is reasonable to require companies with the wealth
and size of Barnes & Noble to litigate in jurisdictions in which
they regularly conduct business." (ECF No. 32 at 7.)

The Court has considered "the relative ability of litigants
to bear expenses in any particular forum" among the factors in a
§ 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F.
Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case,
B.E.'s CEO stated that the company will incur additional
expenses, but it has not shown with any specificity how
detrimental those expenses would be to the company.  Further,
while Hoyle stated that his personal financial status would be
adversely affected by litigating in the Northern District of
California, he did not state why or how his personal finances
would impact B.E., the party to the instant case.  (See Hoyle
Decl., ECF No. 30-1, ¶ 9.)  B.E. has shown that Barnes & Noble

22

has the ability to bear expenses in this forum (see ECF No. 32-3), but the Court does not find this to be a dispositive factor in denying Barnes & Noble's Motion.   But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses").   The Court finds that the evidence presented is insufficient to make a showing that B.E. or Barnes & Noble will be adversely affected by litigating in either forum.   The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer.   While Barnes & Noble has made a showing that its business would be disrupted by the absence of its proposed witnesses, B.E. has made an equal showing that its business would be disrupted in having to prosecute the instant case in California.   Barnes & Noble has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both

23

parties.  As a result, the hardship to Barnes & Noble does not indicate transfer is more convenient.

### C.   Interests of Justice

Barnes & Noble argues that transfer to the Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor. (ECF No. 28-1 at 9-11; ECF No. 39 at 8-9.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1.  In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

#### 1.   Trial Efficiency

Barnes & Noble argues that while the Western District of Tennessee has a shorter median time from filing to trial, "the average docket of pending cases per Judge [is] actually higher" in the Western District of Tennessee than in the Northern District of California.  (ECF No. 39 at 9.)  Barnes & Noble admits, however, that in general this factor is neutral.  (ECF No. 28-1 at 10.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year."  (ECF No. 32 at 14.)  B.E. cites the 2011 Federal Court Management Statistics for both districts to illustrate

24

that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time from filing to trial in the Western District of Tennessee was 20.8 months.  (Id. (citing ECF No. 32-4).)

The Court agrees with Barnes & Noble and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

### 2.   Local Interest

Barnes & Noble argues that the Northern District of California has strong local ties to the instant case because Barnes & Noble's Nook operations are located there, the majority of potential witnesses are located there, the sources of proof are located there, and the alleged infringement took place there.  (ECF No. 28-1 at 9; ECF No. 39 at 8-9.)  Barnes & Noble also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because they are "very weak" and possibly manufactured for this litigation.  (ECF No. 39 at 2-3, 9; see ECF No. 28-1 at 4)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here.  (ECF No. 32 at 15.)  B.E. contends that the Western District of Tennessee has a "local interest in deciding whether one of its resident's patent rights have been violated and [in] awarding an appropriate

25

amount of damages." (ECF No. 32 at 15.) B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation." (Id.) Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the district. (Hoyle Decl., ECF No. 30-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer. While Barnes & Noble has strong local ties to the Northern District of California, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation. B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the district for seven years. B.E.'s connections, therefore, are neither "recent" nor "ephemeral." As a result, Barnes & Noble has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Barnes & Noble has not demonstrated that the Northern District of California is a more

convenient forum than the Western District of Tennessee.

Therefore, Barnes & Noble's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 14, 2013, stay of all proceedings.  (ECF No. 41.)  Regarding Plaintiff's Motion to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No. 33), Defendant shall have eleven (11) days from the date of entry of this Order, up to and including July 23, 2013, to file its Response.

**IT IS SO ORDERED** this 12th day of July, 2013.

/s/ Jon P. McCalla
CHIEF U.S. DISTRICT JUDGE